# Exhibit A

Daniel S. Robinson (SBN 244245)
Wesley K. Polischuk (SBN 254121)
Michael W. Olson (SBN 312857)
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, California 92660
(949) 720-1288; Fax: (949) 720-1292
mrobinson@robinsonfirm.com
drobinson@robinsonfirm.com
swilson@robinsonfirm.com
wpolischuk@robinsonfirm.com

Jeremiah Frei-Pearson (pro hac vice forthcoming)
Andrew C. White (pro hac vice forthcoming)
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
445 Hamilton Ave, Suite 605
White Plains, New York 10601
(914) 298-3281; Fax: (914) 908-6709
jfrei-pearson@fbfglaw.com
awhite@fbfglaw.com

*Counsel for Plaintiff and the Class*

FILED
SAN MATEO COUNTY
OCT 05 2018
Clerk of the Superior Court
By _____
DEPUTY CLERK

18 – CIV – 05423
CMP
Complaint
1422344

# THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN MATEO

| | |
|---|---|
| JOSEPH MELENDEZ,<br><br>Plaintiffs,<br><br>vs.<br><br>FACEBOOK, INC. and DOES 1 to 50, Inclusive,<br><br>Defendants. | CASE NO: **18CIV05423**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. Violation of California Legal Remedies Act, Cal. Civ. Code § 1750, et seq.<br>2. Violations of Business and Professional Code § 17200 et. seq.<br>3. Violation of California Customer Records Act, Cal. Civ. Code §§ 1798.80 et. seq.<br>4. Negligence<br>5. Breach of Implied Contract<br><br>**BY FAX** |

Plaintiff JOSEPH MELENDEZ ("Plaintiff"), on behalf of himself and all other California residents similarly situated, files this Class Action Complaint ("Complaint") against Defendant FACEBOOK, INC. ("Facebook" or "Defendant"), and respectfully alleges the following:

///

1

CLASS ACTION COMPLAINT

9746

2018 OCT -5 P 4: 10

## NATURE OF THE ACTION

1. This class action seeks to redress Facebook's unlawful and negligent disclosure of millions of users' accounts, which included users' confidential personal information, in violation of California Consumers Legal Remedies Act (the "CLRA"), California Civil Code § 1750, *et seq.*, California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq.* ("UCL"), Violation of California Customer Records Act, Cal. Civ. Code §§ 1798.80 *et. seq.*, and common law.

2. Defendant failed to fulfill its legal duty to protect Facebook users' personal identifying information ("PII") which was stored in its systems. Facebook recklessly and negligently disregarded is obligations to safeguard users' PII which resulted in a massive data breach, as disclosed on September 28, 2018 (the "Data Breach" or "Breach").

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the entire action by virtue of the fact that this is a civil action wherein the matter in controversy, exclusive of interest and costs, exceeds the jurisdictional minimum of the Court. The acts and omissions complained of in this action took place in the State of California. Venue is proper because this is a class action, the acts and/or omissions complained of took place, in whole or in part within the venue of this Court.

4. Venue is further proper because Facebook's Terms of Service specify that "[f]or any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Facebook Products ('claim'"), you agree that it will be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County."[1]

## PARTIES

5. Plaintiff JOSEPH MELENDEZ is a resident of Whittier, California. Plaintiff has held a Facebook user account for more than 10 years which he regularly uses for networking and social media interactions. Plaintiff provided confidential information to Defendant including his name, phone number, email address, and date of birth in connection with his Facebook account registration. Additionally, Plaintiff created a unique password to access his account. Plaintiff uses his Facebook user account for a variety of personal purposes and reasonably expected that Defendant would maintain the privacy of his

---

[1] *See* Facebook Terms of Service, https://www.facebook.com/terms.php (last visited Sept. 28, 2018)

confidential account information. Given the broad scope of the Data Breach, Plaintiff's account was almost certainly amongst those included in the Data Breach.

6. Defendant Facebook, Inc. is incorporated in the state of Delaware with its principal place of business located at 1601 Willow Rd., Menlo Park, California 94025.

## FACTS

### A. Facebook's Data Breach

7. Facebook operates one of the world's leading online social media and networking platforms. Facebook's more than 2 billion users create and update customized profiles that can include personal information such as their name, occupation, interests, relationship status, religious and political affiliations, and educational and work histories. Defendant collects and stores account holders' PII in connection with these user accounts. This data includes, but is not limited to, first and last names, birthdays, telephone numbers, email addresses, and unique account passwords.

8. PII is of great value and Facebook has a duty to take every reasonable measure to protect user information and safeguard it from unlawful disclosures or theft.

9. Facebook represents in its Data Policy and Privacy Choices that it will safeguard users PII. When Plaintiff and members of the Class signed up for Facebook accounts, they entrusted Facebook with their PII with the understanding that Facebook would safeguard that information. That expectation was recently reinforced when Facebook founder and chief executive Mark Zuckerberg released a statement proclaiming "We have a responsibility to protect your data, and if we can't then we don't deserve to serve you."[2] Facebook further reinforces this expectation through hosting and updating its "Facebook and Privacy" page[3] and providing extensive account security tips and information,[4] and by representing that it has "top-rate security measures in place to help protect you and your data when you use Facebook,"[5] thus presenting itself as a secure platform that gives users the ability to control whether information is shared

---

[2] *See* Mark Zuckerberg March 21, 2018 Statement, https://www.facebook.com/zuck/posts/10104712037900071 (last visited Sept. 28, 2018)

[3] https://www.facebook.com/fbprivacy (last visited Sept, 28, 2018).

[4] See Keeping Your Account Secure, https://www.facebook.com/help/235353253505947/?helpref=hc_fnav (last visited Sept. 28, 2018).

[5] https://www.facebook.com/about/basics/stay-safe-and-secure/how-youre-protected (last visited Oct. 4, 2018).

or not, based on the criteria users themselves set.

10.     In a September 28, 2018 statement, Facebook announced that on September 25, 2018 it discovered that certain user data for approximately 50 million users was exposed by Defendant, as hackers exploited had a feature on Facebook's platform -- a vulnerability in the code that may have been present since as early as July of 2017.[6]

11.     Defendant confirmed that the breach allowed hackers "to steal Facebook access tokens which they could then use to take over people's accounts," thus exposing the PII contained in those accounts.[7]

12.     Access to users' accounts allows hackers to view and download extensive information about the users, including personal information, credit card transactions, geographic location data, and phone call logs.[8]  It also potentially exposed users' accounts on multiple third-party sites and applications that permit users to log in through their Facebook credentials.[9]

**B.     Personally Identifiable Information (PII)**

13.     PII is of great value to hackers and cyber criminals and the data compromised in the Data Breach can be used in a variety of unlawful manners.

14.     PII is information that can be used to distinguish, identify, or trace an individual's identity, such as their name, Social Security number, and biometric records.  This can be accomplished alone, or in combination with other personal or identifying information that is connected, or linked to an individual, such as their birthdate, birthplace, and mother's maiden name.[10]

15.     PII does not include only data that can be used to directly identify or contact an individual (*e.g.*, name, e-mail address), or personal data that is especially sensitive (*e.g.*, Social Security number,

---

[6] *See* Facebook Network is Breached, Putting 50 Million Users' Data at Risk, NY TIMES (Sept. 28, 2018), https://www.nytimes.com/2018/09/28/technology/facebook-hack-data-breach.html (last visited Sept. 28, 2018); Security Update, https://newsroom.fb.com/ news/2018/09/security-update/ (last visited Sept. 28, 2018).

[7] Security Update, https://newsroom.fb.com/news/2018/09/security-update/ (last visited Sept. 28, 2018).

[8] *See* Your Information, https://www.facebook.com/your_information/ (last visited Sept. 28, 2018).

[9] *See* Facebook Data Breach Extended to Third-Party Applications, EWEEK, (Oct. 1, 2018) https://www.facebook.com/about/basics/stay-safe-and-secure/how-youre-protected (last visited Oct. 5, 2018).

[10] *See* Office of Mgmt. & Budget, OMB Memorandum M-07-16 n. 1.

bank account number, payment card numbers).[11]

16. This breach granted access to Plaintiff and the Class Members' user accounts, providing access to additional PII or personal and sensitive information.

17. Therefore, the compromised PII in the Data Breach is of great value to hackers and thieves and can be used in a variety of ways.

18. For example, "[t]hese harms may include the unexpected revelation of previously private information, including both sensitive information (*e.g.*, health information, precise geolocation information) and less sensitive information (*e.g.*, purchase history, employment history) to unauthorized third parties."[12]

19. Information about, or related to, an individual for which there is a possibility of logical association with other information is of great value to hackers and thieves.

20. Indeed, "there is significant evidence demonstrating that technological advances and the ability to combine disparate pieces of data can lead to identification of a consumer, computer or device even if the individual pieces of data do not constitute PII."[13]

21. For example, different PII elements from various sources may be able to be linked in order to identify an individual, or access additional information about or relating to the individual.[14]

22. Further, as technology advances, computer programs may scan the Internet with wider scope to create a mosaic of information that may be used to link information to an individual in ways that were not previously possible. This is known as the "mosaic effect."[15]

---

[11] *See, e.g.*, Nat'l Inst. of Standards & Technology, Guide to Protecting the Confidentiality of Personally Identifiable Information (PII), NIST Special Publication 800-122 (April 2010), at E.S.-1, 2-1.

[12] Fed. Trade Comm'n, Protecting Consumer Privacy in an Era of Rapid Change (March 2012), *available at* http://www.ftc.gov/os/2012/03/120326privacyreport.pdf.

[13] Fed. Trade Comm'n, Protecting Consumer Privacy in an Era of Rapid Change: A Proposed Framework for Businesses and Policymakers, Preliminary FTC Staff Report 35-38 (Dec. 2010), http://www.ftc.gov/os/2010/12/101201privacyreport.pdf.

[14] *See id.* (evaluating privacy framework for entities collecting or using consumer data with can be "reasonably linked to a specific consumer, computer, or other device")

[15] Federal Chief Information Officers Council, Recommendations for Standardized Implementation of Digital Privacy Controls (Dec. 2012), at 7-8.

23. Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts particularly when they have easily-decrypted passwords and security questions.

24. Moreover, using the PII Facebook exposed, identify thieves can open new credit and financial accounts in users' names.

25. Unfortunately for Plaintiff and the class, a person whose PII has been compromised may not fully experience the effects of the breach for years to come:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[16]

26. Accordingly, Plaintiff and the Class Members will bear a heightened risk for years to come.

27. Identity theft is one such risk and occurs when an individuals' PII is used without his or her permission to commit fraud or other crimes.[17]

28. According to the Federal Trade Commission ("FTC"), "the range of privacy-related harms is more expansive than economic or physical harm or unwarranted intrusions and that any privacy framework should recognize additional harms that might arise from unanticipated uses of data."[18]

29. As a direct and proximate result of Facebook's reckless and negligent actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff's and Class Members' PII, Plaintiff and the Class are susceptible to identity theft.

30. The risks associated with identity theft are serious. "While some identity theft victims can

---

[16] G.A.O., Personal Information: Data Breaches are Frequent, but Evidence of Resulting Identity Theft is Limited; However, the Full Extent is Unknown (June 2007), http://www.gao.gov/assets/270/262904.html.

[17] See Federal Trade Commission: Taking Charge: What To Do If Your Identity Is Stolen (April 2013), https://www.consumer.ftc.gov/articles/pdf-0009-taking-charge.pdf.

[18] Fed. Trade Comm'n, Protecting Consumer Privacy in an Era of Rapid Change (March 2012), http://www.ftc.gov/os/2012/03/120326privacyreport.pdf.

resolve their problems quickly, others spend hundreds of dollars and many days repairing damage to their good name and credit record. Some consumers victimized by identity theft may lose out on job opportunities, or denied loans for education, housing or cars because of negative information on their credit reports. In rare cases, they may even be arrested for crimes they did not commit."[19]

31. Further, criminals often trade it on the "cyber black-market" for years following a breach. Cybercriminals can post stolen PII on the internet, thereby making such information publically available.

32. To date, Facebook has not offered Plaintiff and the Class Members any compensation from the past, present, and future harm they may experience as a result of the data breach. Defendant has not offered any form of credit monitoring services, and has therefore failed to protect Plaintiff and the Class Members against fraud and identity theft which may occur as a result of the data breach.

33. Facebook was clearly on notice about the risk of cyber attacks like that which breached its platform, as data security breaches -- and data security breach litigation -- dominated the headlines in recent years, including into 2018.[20] According to the Privacy Rights Clearinghouse Chronology of Data Breaches, over 1,300 breaches were publicly reported in 2017 and 2018 alone.[21]

34. Facebook failed to identify, implement, maintain and/or monitor appropriate data security measures, polices, procedures, controls, protocols, and software and hardware systems to ensure the security of Plaintiff and Class Members' PII.

35. Had Facebook taken appropriate security measures, the Data Breach would not have occurred.

---

[19] *True Identity Protection: Identity Theft Overview*, http://www.idwatchdog.com/tikia//pdfs/Identity-Theft-Overview.pdf (visited Sept. 23, 2016).

[20] *See e.g.*, Seth Fiegerman, *Yahoo Says 500 Million Accounts Stolen*, CNN Tech (Sept. 23, 2016), http://money.cnn.com/2016/09/22/technology/yahoo-data-breach/; Sara Ashley O'Brien, *Giant Equifax Data Breach: 143 Million People Could Be Affected*, CNN Tech (Sept. 8, 2017), https://money.cnn.com/2017/09/07/technology/business/equifax-data-breach/index.html; Jim Finkel and David Henry, *Saks, Lord & Taylor Hit By Payment Card Data Breach*, Reuters (Apr. 3, 2018), https://www.reuters.com/article/legal-us-hudson-s-bay-databreach/saks-lord-taylor-hit-by-payment-card-data-breach-idUSKCN1H91W7; Bill Hutchinson, *87 million Facebook Users To Find Out If Their Personal Data Was Breached*, ABC News (Apr. 9, 2018), https://abcnews.go.com/US/87-million-facebook-users-find-personal-data-breached/story?id=54334187.

[21] *See* Privacy Rights Clearinghouse Chronology of Breaches *available at* http://www.privacyrights.org.

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings this action on his own behalf, and on behalf of all persons similarly situated, pursuant to Code of Civil Procedure §382. Plaintiff seeks to represent the following class:

> "All persons who reside in California whose PII was compromised as a result of the Data Breach."

37. Plaintiff reserves the right to modify or amend the Class definition before the court determines whether class certification is appropriate.

38. Excluded from the Class are: (i) Defendant and any entities in which Defendant has a controlling interest; (ii) any entities in which Defendant's officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendant; (iii) the Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case; and (iv) all governmental entities.

39. The members of the Class are so numerous that their joinder is impracticable. Based on the size of the Data Breach, there are estimated to be hundreds of thousands, if not millions, of Class Members. Their identities, and email addresses can be easily derived from Facebook's internal records.

40. The rights of Plaintiff, and each Class Member, were violated in precisely the same manner by Facebook's reckless and negligent actions, inaction, and omissions that caused the Data Breach and the unauthorized release and disclosure of their PII.

41. There are questions of law and fact common to the Class, as a whole. The common questions of law and fact predominate over any questions affecting only individual Members of the Class, and include, without limitation:

    a. Whether Facebook had a duty to protect Plaintiff's and the Class Members' PII;

    b. Whether Facebook breached it duty to protect Plaintiff's and the Class Members' PII;

    c. Whether Facebook's breach of a legal duty caused its systems to be compromised, resulting in the loss and/or potential loss of over 500 million user accounts;

    d. Whether Facebook properly designed, adopted, implemented, controlled, managed and monitored data security processes, control, policies, procedures and/or protocols to protect Plaintiff's and the Class Members' PII in the Data Breach;

8
CLASS ACTION COMPLAINT

  e. Whether Facebook failed to timely inform Plaintiff and the Class Members of the Data Breach;

  f. Whether Defendant's conduct was negligent; and

  g. Whether Plaintiff and Class Members are entitled to damages.

42. Plaintiff's claims are typical of the claims of the Class Members because Plaintiff, like all Class Members, is a victim of Facebook's wrongful actions, inaction, and omissions that caused the Data Breach, caused the unauthorized release and disclosure of their PII. Plaintiff and his counsel will fairly and adequately represent the interests of the Class Members. Plaintiff's counsel is highly experienced in the prosecution of complex commercial litigation, consumer class actions, and data breach cases.

43. The representative Plaintiff will fairly and adequately represent the members of the Class and has no interests which are antagonistic to the claims of the Class. The Plaintiff's interests in this action are antagonistic to the interests of Defendant, and Plaintiff will vigorously pursue the claims of the Class.

44. The representative Plaintiff has retained counsel who are competent and experienced in consumer, data breach, and invasion of privacy class action litigation, and have successfully represented plaintiffs in complex class actions. Plaintiff's counsel currently represents other plaintiffs in similar complex class action litigation involving wrongful disclosures and access of private information.

45. A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy. The substantive claims of the representative Plaintiff and the Class are nearly identical and will require evidentiary proof of the same kind and application of the same law. There is no plain, speedy or adequate remedy other than by maintenance of this class action.

46. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because class members number in the thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed class members to prosecute their claims individually. Trial of Plaintiff's and the Class Members' claims is manageable. Unless the Class is certified, Defendant will remain free to continue to engage in the wrongful conduct alleged herein without consequence.

47. The persons in the Class are so numerous that the joinder of all such persons individually

in this case is impracticable, and the disposition of their claims in this case and as part of a single class action lawsuit, rather than hundreds or thousands of individual lawsuits, will benefit the parties and greatly reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds or thousands of separate lawsuits.

48. Plaintiff know of no difficulty that will be encountered in the management of this litigation, which would preclude its maintenance of a class action.

49. Absent a class action, Facebook will retain the benefits of its wrongdoing despite its serious violations of the law and infliction of economic damages, injury, and harm on Plaintiff and Class Members.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**(Violation of California Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*)**

50. Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

51. This cause of action is brought pursuant to the California Consumers Legal Remedies Act (the "CLRA"), California Civil Code § 1750, *et seq.* This cause of action does not seek monetary damages at this time but is limited solely to injunctive relief. Plaintiff will later amend this class action Complaint to seek damages in accordance with the CLRA after providing Defendant with notice required by California Civil Code § 1782.

52. Plaintiff and Class Members are "consumers," as the term is defined by California Civil Code § 1761(d).

53. Plaintiff, Class Members and Defendant have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

54. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant was likely to deceive consumers.

55. Cal. Civ. Code § 1770(a)(5) prohibits one who is involved in a transaction from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses,

benefits, or quantities which they do not have."

56. Facebook violated this provision by representing that Facebook took appropriate measures to protect Plaintiff's and the Class Members' PII. Additionally, Facebook improperly handled, stored, or protected either unencrypted or partially encrypted data.

57. As a result, Plaintiff and the Class Members were induced to sign up for a Facebook user account, and provide their PII.

58. As a result of engaging in such conduct, Defendant has violated Civil Code § 1770.

59. Pursuant to Civil Code § 1780(a)(2) and (a)(5), Plaintiff seeks an order of this Court that includes, but is not limited to, an order enjoining Defendant from continuing to engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

60. Plaintiff and the Class Members suffered injuries caused by Defendant's misrepresentations, because they provided their PII believing that Facebook would adequately protect this information.

61. Plaintiff and Class Members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

62. The unfair and deceptive acts and practices of Defendant, as described above, present a serious threat to Plaintiff and members of the Class.

## SECOND CAUSE OF ACTION

**(Violation of Unfair Competition Law,
California Business and Professional Code Section 17200, et seq.)**

63. Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

64. Plaintiff brings this claim on behalf of himself and the Class.

65. The California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq.* ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising, as defined by the UCL and relevant case law.

66. By reason of Defendant's above-described wrongful actions, inaction, and omission, the resulting Data Breach, and the unauthorized disclosure of Plaintiff and Class Members' PII, Facebook

engaged in unlawful, unfair and fraudulent practices within the meaning of the UCL.

67. Defendant's business practices as alleged herein are unfair because they offend established public policy and are immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, in that the private and confidential PII of consumers has been compromised for all to see, use, or otherwise exploit.

68. Facebook's practices were unlawful and in violation of Civil Code § 1798 *et seq.* because Facebook failed to take reasonable measures to protect Plaintiff's and the class members' PII.

69. Defendant's business practices as alleged herein are fraudulent because they are likely to deceive consumers into believing that the PII they provide to Defendant will remain private and secure, when in fact it was not private and secure.

70. Plaintiff and the Class Members suffered (and continue to suffer) injury in fact and lost money or property as a direct and proximate result of Facebook's above-described wrongful actions, inaction, and omissions including, *inter alia*, the unauthorized release and disclosure of their PII.

71. Defendant's above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff's and Class Members' PII also constitute "unfair" business acts and practices within the meaning of Cal. Bus. & Prof. Code § 17200 *et seq.*, in that Defendant's conduct was substantially injurious to Plaintiff and Class Members, offensive to public policy, immoral, unethical, oppressive and unscrupulous; the gravity of Defendant's conduct outweighs any alleged benefits attributable to such conduct.

72. But for Facebook's misrepresentations and omissions, Plaintiff and the class members would not have provided their PII to Facebook or would have insisted that their PII be more securely protected.

73. As a direct and proximate result of Defendant's above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff and the Class Members' PII, they have been injured: (1) the loss of the opportunity to control how their PII is used; (2) the diminution in the value and/or use of their PII entrusted to Facebook; (3) the compromise, publication, and/or theft of their PII; and (4) costs associated with monitoring their PII, amongst other things.

74. Plaintiff takes upon himself enforcement of the laws violated by Defendant in connection with the reckless and negligent disclosure of PII. There is a financial burden incurred in pursuing this action and it would be against the interests of justice to penalize Plaintiff by forcing him to pay attorneys' fees and costs from the recovery in this action. Therefore, an award of attorneys' fees and costs is appropriate under California Code of Civil Procedure § 1021.5.

### THIRD CAUSE OF ACTION

**(Violation of California Customer Records Act, California Civil Code § 1798.80 et.seq.)**

75. Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

76. "[T]o ensure that personal information about California residents is protected," Civil Code section 1798.81.5 requires that any business that "owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

77. Facebook owns, maintains, and licenses personal information, within the meaning of section 1798.81.5, about Plaintiff and the Class.

78. Facebook violated Civil Code section 1798.81.5 by failing to implement reasonable measures to protect Class Members' personal information.

79. As a direct and proximate result of Defendant's violations of section 1798.81.5 of the California Civil Code, the Breach described above occurred.

80. As a direct and proximate result of Defendant's violations of section 1798.81.5 of the California Civil Code, Plaintiff and the Class Members suffered the damages described above, including but not limited to time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their personally identifying information.

81. Plaintiff the Class Members seek relief under section 1798.84 of the California Civil Code, including, but not limited to, actual damages, to be proven at trial, and injunctive relief.

## FOURTH CAUSE OF ACTION

### (Negligence)

82. Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

83. Plaintiff brings this claim on behalf of himself and the Class.

84. Plaintiff and Class Members were required to provide Defendant with certain PII in connection with their Facebook user accounts. Defendant collected and stored this information including their names, birthdays and passwords.

85. Facebook had a duty to Plaintiff and Class Members to safeguard and protect their PII.

86. Defendant assumed a duty of care to use reasonable means to secure and safeguard this PII, to prevent its disclosure, to guard it from theft, and to detect any attempted or actual breach of its systems.

87. Defendant had full knowledge about the sensitivity of Plaintiff and Class Members' PII, as well as the type of harm to could occur if such PII was wrongfully disclosed.

88. Defendant had a duty to use ordinary care in activities from which harm might be reasonably anticipated in connection with user PII data.

89. Defendant breached its duty of care by failing to secure and safeguard the PII of Plaintiff and Class Members. Defendant negligently stored and/or maintained its systems.

90. Further, Defendant, by and through its above negligent actions and/or inaction, further breached its duties to Plaintiff and Class Members by failing to design, adopt, implement, control, manage, monitor and audit its processes, controls, policies, procedures and protocols for complying with the applicable laws and safeguarding and protecting Plaintiff's and Class Members' PII within its possession, custody and control.

91. Plaintiff and the other Class Members have suffered harm as a result of Defendant's negligence. These victims' loss of control over the compromised PII subjects each of them to a greatly enhanced risk of identity theft, fraud, and myriad other types of fraud and theft stemming from either use of the compromised information, or access to their user accounts.

92. It was reasonably foreseeable -- in that Defendant knew or should have known -- that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII

would result in its release and disclosure to unauthorized third parties who, in turn wrongfully used such PII, or disseminated it to other fraudsters for their wrongful use and for no lawful purpose.

93. But for Defendant's negligent and wrongful breach of its responsibilities and duties owed to Plaintiff and Class Members, their PII would not have been compromised.

94. As a direct and proximate result of Defendant's above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff's and Class Members' PII, they have incurred (and will continue to incur) the above-referenced economic damages, and other actual injury and harm -- for which they are entitled to compensation. Defendant's wrongful actions, inaction, and omissions constituted (and continue to constitute) common law negligence/negligent misrepresentation.

95. Plaintiff and Class Members are entitled to injunctive relief as well as actual and punitive damages.

## FIFTH CAUSE OF ACTION

### (Breach of Implied Contract)

96. Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

97. Plaintiff brings this claim on behalf of himself and the Class.

98. Plaintiff and Class Members provided their PII to Facebook in order to utilize Facebook's social media services.

99. Plaintiff and Class Members provided various forms of PII to Facebook as a condition precedent to their use of Facebook's services.

100. Understanding the sensitive nature of PII, Facebook implicitly promised Plaintiff and Class Members that it would take adequate measures to protect their PII.

101. Indeed, a material term of this contract is a covenant by Facebook that it will take reasonable efforts to safeguard Plaintiff and Class Members' PII.

102. Plaintiff and Class Members relied upon this covenant and would not have consented to the disclosure of their PII without assurances that it would be properly safeguarded. Moreover, the covenant to adequately safeguard Plaintiff and Class Members' PII is an implied term, to the extent it is

not an express term.

103. Plaintiff and Class Members fulfilled their obligations under the contract by providing their PII to Facebook.

104. Facebook, however, failed to safeguard and protect Plaintiff and Class Members' PII. Facebook's breach of its obligations under the contract between the parties directly caused Plaintiff and Class Members to suffer injuries.

105. As the direct and proximate result of Defendant's breaches of the contracts between Facebook and Plaintiff and Class Members, Plaintiff and the Class Members sustained actual losses and damages as described above.

106. Accordingly, Plaintiff, on behalf of himself and the Class Members, respectfully request this Court award all relevant damages for Facebook's breach of contract.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class pray for judgment as follows:

1. For an Order certifying the proposed Class pursuant to California Civil Code Section 382, requiring notice thereto to be paid by Defendant and appointing Plaintiff and his counsel to represent the Class;

2. For appropriate injunctive relief and/or declaratory relief, including, but not limited to, an order requiring Defendant to immediately secure and fully encrypt all confidential information, to cease negligently storing, handling, and securing its users confidential information, to notify users whose PII is wrongly disclosed in an expedient and timely manner and to provide identity theft monitoring;

3. Adjudging and decreeing that Defendant have engaged in the conduct alleged herein;

4. For compensatory and general damages according to proof on certain causes of action;

5. For damages on certain causes of action, including $1,000 per Class Member pursuant to pursuant to Cal. Civ. Code § 56.36(b)(1);

6. For reimbursement, restitution and disgorgement on certain causes of action;

7. For both pre and post-judgment interest at the maximum allowable rate on any amounts awarded;

8. For costs of the proceedings herein;

9. For reasonable attorneys' fees as allowed by statute; and

10. For any and all such other and further relief that this Court may deem just and proper, including but not limited to punitive or exemplary damages.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury of all claims and causes of action in this lawsuit to which he is so entitled.

Dated: October 5, 2018

Daniel S. Robinson
Wesley K. Polischuk
Michael W. Olson
**ROBINSON CALCAGNIE, INC.**

Jeremiah Frei-Pearson
Andrew C. White
**FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**

*Counsel for Plaintiff and the Class*